# Ada S. Kellerman *v.* J. H. Miller, Appellant, and Harriet Miller.

*Title by estoppel—Sale by administrator estops administrator as such.*
An administrator who sells land by virtue of authority granted by the orphans' court on petition for leave to sell for payment of debts, is estopped from asserting an individual title as against that made by him as such administrator. The principle of title by estoppel applies as against an after acquired interest.

Argued May 14, 1897. Appeal, No: 151, April T., 1897, by J. H. Miller, one of defendants, from judgment of C. P. Butler Co., May T., 1896, No. 48, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER and ORLADY, JJ. Affirmed.

Ejectment. Before BARKER, P. J., of the 47th judicial district specially presiding.

The facts sufficiently appear in the following opinion by BARKER, P. J., on the question of law reserved:

The plaintiff in above case claims title in an undivided one fourth interest in two lots of ground in the borough of Butler, being lots numbered 43 and 44, in the general plan of said borough. The defendants disclaim title as to an undivided one ninth interest, which they concede to be hers, and defend as to any greater interest claimed by her. The circumstances under which the controversy arises as to the extent of her interest are as follows: On the 16th day of September, 1847, Oliver David and George Miller entered into an agreement in which the former agreed to grant, bargain and sell unto the latter, in trust for John, Joseph and Harvey Miller, his sons, the two lots of ground in controversy for the sum of $847.32, the agreement describing the property as being "in the occupancy of the said George Miller and the same which was sold as his property at sheriff's sale, the purchaser being Nathaniel P. Fetterman, and by him conveyed to the said Oliver David." On the 18th of January, 1872, James Campbell, administrator of Oliver David, presented his petition to the orphans' court of Butler county, reciting the

above mentioned agreement, and stating that George Miller had paid to the decedent, in his lifetime, the whole consideration, excepting the sum of $381.42, and interest, and praying for a decree of specific performance of the contract; and George Miller having joined in the petition, a decree was made directing the administrator to make and deliver a deed for the land described in the agreement to said George Miller, in trust for John Miller, Joseph Miller and Harvey Miller. On February 15, 1873, the administrator of Oliver David executed and delivered a deed in pursuance of the above order of court to I. N. Miller and J. H. Miller, administrators of George Miller, who had died in the meantime, in trust for John Miller, Joseph Miller and Harvey Miller.

On September 5, 1881, a petition was presented, signed and sworn to by I. N. Miller, one of the administrators of George Miller, asking for an order to sell the real estate in controversy for the payment of a debt of $4,103.12, due the administrators, being the balance shown in an administrator's account previously stated by them and filed. The petition set forth that this was all the real estate owned by the said George Miller at the time of his death. A citation was awarded, directed to the heirs of George Miller, whereupon all of the heirs, excepting J. H. Miller and I. N. Miller, the administrators, appeared and "consented that the order should be made as prayed for, the same as if the petition had been presented and the sale made thereon within five years after the death of George Miller." On December 8, the petition of J. H. and I. N. Miller, the administrators, was presented, setting forth that in pursuance of the order of court above mentioned they had sold the real estate to Joseph A. Miller for the sum of $670. This petition was signed and sworn to by both of the administrators, and is indorsed as follows: "Now, December 8, 1881, report presented and confirmed nisi. By the court." It also has indorsed thereon a formal absolute confirmation without date and unsigned, in which the administrators are directed to make a deed to Joseph A. Miller. The fact that this decree was not signed has probably no material bearing as affecting the title, as no exceptions had been filed, and the same could even yet be confirmed nunc pro tunc if it was overlooked. But it has some bearing in answer to the assertion made in argument that J. H. Miller signed the

deed to Joseph Miller in pursuance of and by reason of an order of court directing him to do so. On February 28, 1882, the administrators executed a deed to Joseph A. Miller, which was recorded August 11, 1883. On the 10th day of August, 1883, Joseph Miller executed a quitclaim deed to I. N. Miller, George P. Miller and T. A. Cunningham in trust for Harriet Miller, for an undivided three fourths in the land in controversy, thus vesting in each of the grantees above named, an undivided one fourth interest in whatever title he had in the land in dispute. I. N. Miller, one of the grantees in this deed afterwards died, having devised his interest in the land in dispute to the plaintiff in this suit, who was his wife, and she claims that Joseph Miller acquired a complete title by virtue of the deed from the administrators of George Miller and Joseph Miller having conveyed the undivided one fourth interest to her husband to which she acquired title by his will, she is entitled to recover to the extent of an undivided one fourth interest in this suit.

The defendants contend that George Miller, at the time of his death, had no title in these lots, excepting in trust for his three sons, John, Joseph and Harvey. (J. H. Miller, also sometimes referred to as James H. Miller, is the same person as Harvey Miller, one of the cestuis que trustent.) That therefore Joseph Miller took no title at the orphans' court sale, and that the only interest the plaintiff has is an undivided one fourth of the share Joseph had by virtue of the trust deed which, according to our arithmetic, would be an undivided one twelfth of the whole, but which is treated in the pleadings and all through the case as an undivided one ninth; this, however, is immaterial matter in view of the disposition we make of the case.

The plaintiff replies that J. H. Miller, one of the defendants, having sold this property as administrator of George Miller, is now estopped from gainsaying the title thus made and asserting as against it the title he held under the trust deed. The defendants further urge, as matter of defense, that whatever title Joseph Miller acquired by the deed from the administrators was in trust for his cotenants and cannot be asserted as against them or their grantees.

J. H. Miller, one of the defendants, acquired in 1895 by purchase at sheriff's sale the interest of Joseph Miller in the land

in controversy, and also the interest of George P. Miller, who was one of the grantees in the deed from Joseph, and he has also acquired by conveyance, dated August 26, 1893, the interest of John Miller in the land in dispute, and this leaves only the plaintiff and the two defendants interested in the title, either under the trust deed or the orphans' court sale, and it is apparent that no antagonism exists between the plaintiff and Harriet Miller as to their respective interests. She claims under the deed from Joseph Miller the same as the plaintiff does, and if it be determined that Joseph Miller acquired no title by the orphans' court sale, then each would have the same interest, each representing an undivided one fourth of the interest Joseph had under the trust agreement and deed, and if. it be determined that Joseph Miller acquired a good title by the orphans' court sale, each would have an undivided fourth interest in the land. Therefore whatever controversy there is in the case is between the plaintiff and J. H. Miller.

There being no evidence in the case to show any title in George Miller, except in trust for his three sons, it is apparent that Joseph Miller acquired no title by the orphans' court sale as against J. H. Miller, unless the latter has done something whereby in equity he ought to be restrained from gainsaying the title acquired by orphans' court sale, and asserting any title in himself as against that title. After a careful examination of the record evidence in this case and the application of the authorities bearing upon title by estoppel, we are satisfied that the acts of J. H. Miller, as shown by the records, are such as make it inequitable in this case to allow him to attack the title made by him to his brother, Joseph, by reason of an interest owned by him at the time he made this title.

The presumption is that J. H. Miller was not ignorant of his rights in the premises since he, as one of the administrators of George Miller, received a deed from the administrator of Oliver David reciting the trust, while on the other hand, there is no evidence that Joseph Miller had any knowledge of the existence of this trust. We cannot comprehend why this deed was made to the administrators in trust for the three sons of George Miller instead of being made directly to them, but J. H. Miller and I. N. Miller paid the balance of purchase money as administrators—$410.40—as shown by their account in which they

ask credit for the same, and for the payment of the balance due them as administrators, including this amount, they obtained an order to sell the real estate as the property of decedent. Had it been purchased by a person unconnected with the title, there can be no question but that J. H. Miller would have been estopped from asserting the title he then held as against such a purchaser. Although he did not join in the petition he did join in the return to the order of sale in the bond and in the deed, and it will not do to say that he merely participated in these matters by direction of the court and in pursuance of what he believed to be his duty as an administrator. So far as the evidence shows, there was no shadow of title in George Miller, nor any assertion on the part of any one that such title existed, and had J. H. Miller desired to put himself in such a position as not to be restrained from asserting the title that he knew he had in the land, it would have been a very easy matter to have described the interest they were selling in the petition, return and deed, in such a way that he would not be prejudiced thereby, although had he done so there probably would have been no purchaser. Instead of doing this he undertakes to sell this property as the property of the decedent for his own purposes, to wit: To raise money to pay a debt due him and his coadministrator, and if the purchaser at such a sale would not acquire his individual title by estoppel, the reasons for applying the principle invoked in this case are no longer well founded in any case.

If then J. H. Miller would be estopped from asserting the title acquired by the trust deed as against the title made by him as administrator of George Miller in the hands of a stranger or innocent purchaser, are there any facts in this case that would prevent Joseph Miller or his representatives, the plaintiff here, from setting up the estoppel? The defendants alleged that the purchase money had not been paid by Joseph Miller, and therefore he has not been prejudiced or injured by the acts of J. H. Miller to the extent that he could set up a title by estoppel. J. H. Miller was the only witness offered to prove the nonpayment of the purchase money by Joseph Miller, I. N. Miller, his coadministrator, being dead, and the plaintiff being his widow and claiming title under him. The lips of I. N. Miller were sealed by death, therefore it was incompetent for J. H.

Miller to testify to a matter such as the nonpayment of the purchase money, which he could have contradicted had he been living. . Probably this testimony would be inadmissible because of the objection raised that no notice was given in the defendants' abstract of title that the deed from the administrator would be attacked for nonpayment of purchase money. We are not clear on this, as we have not before us the rules of court regulating such matters. We admitted his testimony with the view of ruling on its admissibility in this opinion, and it was to the effect that they did not receive the purchase money from Joseph because he was unable to pay it, and even if this fact had been proven by a witness competent to testify to it, probably it would not have availed the defendant, J. H. Miller, in this suit, that he and his coadministrator, through some arrangement with Joseph Miller, their brother, delivered the deed to him without payment of the purchase money, it being due to them as individuals, because of the balance due them as administrators, and more especially since the present claimant holds under the other administrator.

We shall not at length discuss the principle on which title by estoppel is founded, as the same is too well known to require discussion, nor shall we incumber this opinion with a citation of the numerous authorities which seem to us to make it our duty to apply the principle in this case. We refer, however, to Miller's Appeal, 84 Pa. 391, for a discussion of the subject by Chief Justice Agnew; also Young v. Babilon, 91 Pa. 280 ; Donaghy's Estate, 152 Pa. 92, and the cases therein cited.

In the case of Miller v. Springer, reported first in 70 Pa. 269, and again in 88 Pa. 203, the syllabus is as follows : In the last report, " an executor and legatee, who, in certain legal proceedings had, in an answer as executor, treated the land devised by the will as that of the testator in an action of ejectment brought against him as an individual, was held to be estopped from setting up an adverse title against the estate. In a second ejectment against him, he sought to avoid the effect of this decision by showing that he had not participated in a certain act as his coexecutor in returning the land for appraisement, and that he had not in fact accepted the deed vesting title in himself when answer was made. The court affirmed the case on the authority of the first decision, and directed a verdict for the plaintiff. Held that this was not error."

When the case of Miller v. Springer was first before the Supreme Court (70 Pa. 269), Justice SHARSWOOD in his opinion, referring to the facts of the case, says, "Surely if there is any force in the maxim, allegans contraria non est audiendus, it ought to be applied in such a case as this," and we, as already intimated above, think that language particularly applicable to this case.

The defendants' counsel referred us, however, to the case of Werkheiser v. Werkheiser, 3 Rawle, 326, where it was held that the presentation of a petition to the orphans' court setting forth that the petitioner's father died seized of the premises therein described, leaving a widow and seven children, and praying the court to award an inquest to make partition, etc., does not estop the petitioner from afterwards maintaining an ejectment for the same premises and proving that they were the estate of his mother, who was his father's first wife, and descended to him as her heir to the exclusion of his brothers and sisters, the children of a second wife. But this, as appears from the opinion of Justice ROSS, was because the facts set forth in the petition amounted to nothing more than an admission, which did not operate against the petitioner because there was nothing further done in the matter than the presentation of his petition. This authority applies to the matter of the original petition presented in this case by J. H. Miller and his coadministrator which we declined to admit as evidence. Had the proceedings instituted by the petitioner in the case cited above proceeded to final decree, and the property been taken by the heirs or bought at a trustee's sale, doubtless the proceedings thus instituted by the petitioner would have been held to estop him from setting up his individual title.

The defendant's counsel also invoked the principle announced in the text books that a deed will estop a party only in the character in which he executes it. Of course that proposition is true in the sense that a person who executes a deed as a mere instrument of the law for making the sale or conveying the title is not estopped from afterwards asserting title in himself, as for instance, a sheriff who has sold and conveyed real estate by virtue of an execution directed to him, and conversely a person who has sold real estate as an individual would not be estopped when acting in a representative capacity from asserting title in

those whom he represented, if he was bound by virtue of his position to protect an alleged interest of those he represented. Many other instances might be cited in which this rule would apply, but it certainly would not apply where a person of his own volition sells and conveys property as that of another whom he represents, and conveys no notice or intimation to the purchaser that he as an individual claims title.

We have no case in Pennsylvania where the facts are precisely identical with the facts of this case. We find, however, two cases in the Massachusetts Reports in which the facts are very similar.

In Poor v. Robinson, 10 Mass. 131, two executors who sold land in their capacity as executors by virtue of a power given them by the will of their testator were estopped from asserting an individual title as against that made by them as executors.

In Heard v. Hall, 33 Mass. 457, a guardian who had sold real estate as the property of his ward by virtue of an order of sale obtained upon his application was held estopped from asserting an individual title as against the title made by him as guardian.

In the case of Martin v. Ives, 17 S. & R. 363, Justice GIBSON said as follows : " Estoppels are sometimes said to be odious, and it has been affirmed that there is no such thing as equitable estoppel. But the doctrine of election, which prevents a party from claiming repugnant rights, and which has been so advantageously introduced into the courts of equity is manifestly an extension of the principle. In courts of law they are for the most part reconcilable to the purest morality, and when they produce neither hardship nor injustice they merit indulgence, if not favor. The conclusiveness of judgments, which conduces so essentially to peace and repose, has no other foundation." When we apply the language used above to the facts of this case and consider the peculiar facts of the case, the relationship of the respective parties interested to each other and to the titles as shown by the record, we certainly consider it more consonant with equity and the probable intention of the parties by whose acts the titles were placed in the position they were found when this suit was brought, that the courts should respect the title made by the administrators of George Miller in all controversies between the parties.

One contention of the defendants' counsel remains to be con-

sidered.   It is claimed by them that whatever title Joseph Mil-
.ler obtained by virtue of the orphans' court sale would inure to
the benefit of his cotenants and still leave in him or his ven-
dees only an undivided one third interest.   If J. H. Miller is
estopped from setting up his title as a cotenant as against the
title made by him as administrator, then it follows that he can-
not assert that the title taken under his own deed by Joseph
Miller was for his benefit as a cotenant.   This principle might
have applied as between Joseph Miller and John Miller, a coten-
ant entirely disconnected with the orphans' court sale, but J. H.
Miller having acquired the interest of John Miller, and now
defending under his deed is just as much estopped from assert-
ing this after-acquired title as against the title conveyed by him
as administrator, as he is from asserting the title which he
already had at that time.   The authorities are full and complete
as to the application of the principle of title by estoppel as
against an after-acquired interest.   J. H. Miller, has by his own
act, estopped himself from asserting any title under the trust
deed, and therefore the same acts estop him from asserting that
the title taken by Joseph Miller at the orphans' court sale should
inure to his benefit.

It follows from the above that judgment should be entered
on the verdict rendered by the jury in pursuance with our in-
structions.   Probably it would have been more consonant with
the practice to have directed a verdict for the plaintiff for an
undivided one ninth interest, with the right to direct a verdict
in her favor for an undivided one fourth after consideration of
the reserved point, but this is immaterial, as the same result is
reached by directing judgment to be entered on the verdict. ·

And now, January 21, 1897, judgment for the plaintiff on the
reserved point, and it is directed that on the payment of the jury
fee judgment be entered for the plaintiff for an undivided one
fourth interest described in the writ.

*Errors assigned* were (1) In affirming the plaintiff's first
point, which point and the answer of the court thereto were
as follows: "1. By the proceedings in the orphans' court by
which the land in dispute was sold as the property of George
Miller, deceased, J. H. Miller and John Miller were estopped
from subsequently claiming the land as their own under the

agreement between Oliver David and George Miller, trustee. *Answer:* We reserve that question inasmuch as that raises the real question of the case, and the questions raised in the other points are all collateral to that.   They could not be formally passed upon at this time, but can be in an opinion prepared hereafter under the facts of the case, and we direct that you render a verdict in favor of the plaintiff for an undivided fourth of the land described in the writ, subject to the question reserved and the right of the court to direct that judgment be entered for the plaintiff for an undivided ninth interest non obstante veredicto," and in not directing a verdict and entering judgment for the plaintiff for but the undivided one ninth interest in accordance with the request in the defendants' points submitted and in accordance with the law arising upon the facts in the record.   (2) In disregarding the points submitted by the defendants in writing, in not answering the same, and in not returning them with its opinion as a part of the record, and in entering judgment for the plaintiff in disregard of the propositions of law therein contained upon the facts in the record without giving the defendants the benefit of said points, answers or exceptions.   (3) In holding and deciding in its opinion filed against the exception of the defendants that J. H. Miller and John Miller were estopped from asserting their superior title as cotenants with Joseph Miller as against Mrs. Kellerman, the plaintiff, and Joseph Miller's vendee, by reason of the fact that J. H. Miller signed a report of an orphans' court sale made by I. N. Miller, his coadministrator, to Joseph Miller, and joined in the execution of a deed therefor in his capacity as administrator, whilst Joseph Miller stood in the relation of tenant in common with John Miller and J. H. Miller with respect to the property in question.   (4) In holding and deciding that the title acquired by Joseph Miller at the orphans' court sale, whilst standing in the relation of cotenant with respect to the property sold would inure to his exclusive benefit, and that J. H. Miller was estopped from asserting his superior title to the property in question as tenant in common with Joseph Miller at the time of the purchase, as against Joseph Miller and his vendees. (5) In applying the doctrine of estoppel to the facts in this case, and in holding and deciding that one tenant in common may by the purchase of an outstanding title or incumbrance

affecting the common property estop his cotenants out of title. (6) In directing judgment to be entered for the plaintiff for the undivided one fourth interest in the lots in question, instead of the one ninth interest, against the exception of defendants.

*H. H. Goucher*, with him *J. W. Hutchinson* and *Lev. McQuistion*, for appellant.—It was held in the case of Hill v. Epley, 31 Pa. 331, to be the established law of Pennsylvania that inquiry is always a duty of the purchaser, and that the maxim of caveat emptor imposes the performance of such duty. And to the same effect are the cases of Jacques v. Weeks, 7 Watts, 267, Hood v. Fahnestock, 1 Pa. 470, and Knouff v. Thompson, 16 Pa. 362.

If the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel: Hill v. Epley, 31 Pa. 331; Crest v. Jack, 3 Watts, 238; Hepburn v. McDowell, 17 S. & R. 383.

A deed like a judgment estops the parties only in the character in which they execute it: Wright v. DeGroff, 14 Mich. 164; Doe d. Hornby v. Glenn, 1 Ad. & E. 49; Smith v. Penny, 44 Cal. 162; Hall v. Matthews, 68 Ga. 490; Trentman v. Eldridge, 98 Ind. 525.

The law is too well settled that one tenant in common cannot purchase a title affecting the common property, to admit of serious controversy, and the rule being founded on considerations of public policy is an inflexible one. We refer the court to the late case of Tanney v. Tanney, 159 Pa. 277.

*T. C. Campbell*, with him *James M. Galbreath* and *James B. McJunkin*, for appellee.—As to the question of estoppel cited, Sims v. Chew, 15 S. & R. 196; Miller v. Springer, 70 Pa. 269; Miller v. Springer, 88 Pa. 203.

If the orphans' court proceeds to sell the land of a decedent as a fee simple while the decedent has a less estate, his sisters, who are entitled to the fee, are estopped if they accept part of the purchase money: Cameron v. Coy, 165 Pa. 290.

Even where the orphans' court has no jurisdiction to authorize and approve a sale of real estate, yet if it is done and the guardian of the decedent's son is cited to appear but he makes

no objection, and he benefits by the purchase money indirectly, he cannot, eight years afterwards, in an action of ejectment recover the land: Jacoby v. McMahon, 174 Pa. 133.

OPINION BY ORLADY, J., July 23, 1897 :

On September 17, 1847, Oliver David contracted in writing to sell and convey two lots of ground in the borough of Butler in consideration of $847.32, to George Miller, in trust for John Miller, Joseph Miller, and Harvey Miller, his sons. Possession was taken under the contract by George Miller and the purchase money (except $381.42) was paid by him to Oliver David, who died without making a deed for the premises. On January 18, 1872, James Campbell administrator of Oliver David, presented his petition to the orphans' court for specific performance of this contract, and a decree was entered against George Miller for the specific execution of the contract according to its terms.

In December, 1872, George Miller died, without having complied with the decree for specific execution, and letters of administration were taken out on his estate by I. N. Miller and J. H. Miller, who, as administrators of George Miller, deceased, paid the balance of the purchase money, and on February 15, 1873, James Campbell as administrator, made and delivered a deed for the premises to I. N. Miller and J. H. Miller, administrators of George Miller deceased in trust for said estate and in trust for John Miller and Joseph Miller and Harvey Miller, their heirs and assigns forever.

On February 3, 1879, I. N. Miller and J. H. Miller, as administrators of George Miller, presented a petition to the orphans' court praying for leave to sell the two lots of ground for the payment of debts of George Miller, deceased. This petition was not pressed and on July 18, 1881, I. N. Miller as one of the administrators of George Miller presented a petition to the orphans' court for leave to sell the two lots of ground for the payment of a debt of George Miller of $4,103.12 due the administrators as shown by an administration account which was previously stated by them and filed, and a citation on the widow and heirs was awarded. On July 30, 1881, the widow and all the heirs except I. N. Miller and J. H. Miller agreed in writing that the order should be made as prayed for, the same as if the petition had been presented and the sale of property

had been made thereon within five years after the death of George Miller. On December 8, 1881, I. N. Miller and J. H. Miller, as administrators, presented to the orphans' court their report of the sale of the land for the sum of $670 to Joseph Miller, which sale was confirmed, and a deed was directed to be made to Joseph Miller; and this order was complied with February 28, 1882. On August 10, 1883, Joseph Miller executed and delivered a quit claim deed for the undivided three fourths interest in the land in dispute to I. N. Miller, George P. Miller and T. A. Cunningham, in trust for Harriet Miller. I. N. Miller died in 1884, and by his will devised his interest in the land in dispute (subject to a life estate in favor of Elizabeth Miller, his mother) to his widow, now Ada S. Kellerman, the plaintiff. Elizabeth Miller died before this suit was brought. By other conveyances the interests of all parties except that of Ada S. Kellerman and Harriet Miller have become vested in J. H. Miller, who, with Harriet Miller was in possession of the premises, and this action was brought by Ada S. Kellerman, devisee of I. N. Miller to recover the undivided one fourth interest of the land in dispute which she claims under the deed of Joseph Miller to I. N. Miller, dated August 10, 1883.

It clearly appears by the evidence that J. H. Miller was one of the actors in securing the sale of this real estate under the proceedings in the orphans' court; he joined in the return to the order of sale, in which he averred that the title to this land was in George Miller; also that he had received the purchase money and had under the authority of the decree confirming the return of sale executed a deed, but he now asserts that the proceeding was void because the title was not in fact in George Miller, but in cestuis que trustent. The order for sale of this real estate was secured after the account of the administration had been filed and a balance had been determined in their favor against the estate of George Miller, as against whose land they claim a lien, and from which they claimed payment of this debt. J. H. Miller was so intimately connected with the title as a party in interest, with the administration account, and with the proceedings to sell the real estate, that he could not have been ignorant of the natural effects of his act; and had the land been purchased by a person unconnected with the title, there could be no question but that J. H. Miller would have been

estopped from asserting the title he then held, as against such a purchaser.　So far as the evidence shows, there was no shadow of title in George Miller, nor any assertion on the part of any one that such title existed, and had J. H. Miller desired to put himself in such a position as not to be restrained from asserting the title that he knew he had in the land, it would have been a very easy matter to have described the interest they were selling in the petition asking for the order of sale, and the deed following it in such a way that he would not be prejudiced thereby; although, had he done so, there probably would have been no price offered.　Instead of doing this, he undertook to sell the property under cloak of an order of court, as the real estate of the decedent, that is to raise money to pay in part the debt due him and his coadministrator, and if the purchaser at such a sale would not acquire his individual title by estoppel, the reasons for applying the principle invoked in this case would be no longer well founded in any case, as the convincing argument of the learned trial judge shows.　To us this is unanswerable.

The opinion of the court below in disposing of the legal question reserved on the trial covers the whole case, and to add to it would be mere repetition.

The assignments of error are overruled, and the judgment is affirmed.